UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAY ALAN AINSWORTH,<br><br>               Plaintiff,<br><br>vs.<br><br>B. DROZ, and A. WILLIAMS,<br><br>               Defendants. | 4:16-CV-04042-KES<br><br><br>ORDER DENYING MOTION FOR<br>SUMMARY JUDGMENT AND<br>GRANTING AND DENYING<br>VARIOUS OTHER MOTIONS |

Plaintiff, Jay Alan Ainsworth, is an inmate at the South Dakota State Penitentiary in Sioux Falls. He filed a pro se lawsuit under 42 U.S.C. § 1983. Docket 1. Ainsworth has filed multiple motions including motion to withdraw, to add discovery, for medical records, to compel discovery, for reconsideration, for default judgment, and for a jury trial. Dockets 31, 33, 36, 46, 48, 50, 57, 58, 60, 62, 66). Defendants move for summary judgment. Docket 38. For the reasons stated below, Ainsworth's motions are granted and denied, and defendants' motion for summary judgment is denied.

## FACTUAL BACKGROUND

On October 11, 2015, Ainsworth did not receive his lunch. Docket 41 ¶ 3. Ainsworth became upset and began kicking the door of his cell. *Id.* A call was made to Correctional Officer Bryan Droz, who came to Ainsworth's cell, gave him a sack lunch, and told him to stop kicking his cell door. *Id.* ¶ 4. Most of the contents of the sack lunch were missing. Docket 31 at 1. Ainsworth

continued to kick the door. Docket 41 ¶ 4. The milk from his lunch spilled on the floor, whether it was intentional or not is disputed by the parties. Docket 64 at 6. Droz then sprayed Cap Stun gas into Ainsworth's cell. Docket 41 ¶ 5.

At this point, Correctional Officer Brian Gengler came to help Droz cuff Ainsworth. *Id.* ¶ 6. Ainsworth put his hands out of the cell to be cuffed. *Id.* ¶ 7. Defendants aver that after one of Ainsworth's hands was cuffed, he pulled his hands back into his cell, giving him control of the cuffs, a dangerous situation for the officers. *Id.* ¶¶ 7-8. Ainsworth avers that after his left hand was cuffed, one of the officers bent his right thumb back, attempting to break it, and that was why Ainsworth pulled his hands back into the cell. Docket 56 ¶ 9. Droz ordered Ainsworth to come to the front of his cell and threatened to spray him again. Docket 41 ¶ 8. Ainsworth complied and was cuffed. *Id.* ¶ 9. At around this time, Correctional Officer Andrew Williams arrived. *Id.* ¶ 8.

After the cell door was opened, defendants aver that Ainsworth began to resist again. *Id.* ¶ 9. Ainsworth avers that he did not resist at any time. Docket 56 ¶ 2. Williams tackled Ainsworth to the ground. Docket 41 ¶ 9. Defendants aver that Williams slipped in the spilled milk, fell to the ground, and in the scuffle, was trapped under Ainsworth. *Id.* ¶ 10. Gengler jumped on Ainsworth's legs and punched his upper thigh multiple times. Docket 43 ¶ 9. Ainsworth avers that defendants punched him in the head with closed fists. Docket 56 ¶ 1. After Gengler and Droz got Williams out from under Ainsworth, he stopped resisting. Docket 41 ¶ 12.

Ainsworth was put in leg irons and taken to a holding cell. Docket 41 ¶ 13. While taking him away, Droz and Williams aver that they did not notice any obvious physical injury suffered by Ainsworth or blood on him. Docket 41 ¶ 16; Docket 42 ¶ 14. Gengler avers that at the same time he noticed a lump on Ainsworth's head. Docket 43 ¶ 13. Ainsworth avers that he had a two-inch knot on his forehead and another knot on the back of his head that later split open due to swelling. Docket 56 ¶ 6.

Ainsworth avers that he filed an Informal Resolution Request (IRR) on October 14, 2015, and gave it to Sargent Day, a prison official in the Segregated Housing Unit (SHU). Docket 56 ¶ 5. Day told Ainsworth he would turn the IRR into the unit coordinator. At that point, Ainsworth was incarcerated in the SHU, and he could not walk to the unit coordinator and turn it in himself. Docket 54 at 3. A couple days later, Ainsworth asked Day where his copy of the IRR was, and Day told Ainsworth he would get back to him. *Id.* Ainsworth tried to get another IRR form but was denied. *Id.* Ainsworth claims that no one responded to his IRR. Docket 72 at 4.

When Ainsworth got out of the SHU, he filed another IRR. Docket 54 at 3; Docket 45-3. In this IRR, he claims that he filed a complaint a month earlier while in the SHU, but he never received a response. Docket 45-3. On November 24, 2015, the prison rejected his grievance. Docket 45-4. The merits were not considered because Ainsworth had thirty days to file an IRR, and his filing was found to be untimely. *Id.* Ainsworth did not file a Request for

Administrative Remedy (RAR) within ten days, which is the next stage under South Dakota Department of Corrections policy. Docket 45 ¶ 11.

On March 4, 2016, Ainsworth filed another IRR. Docket 45-5. In it, he again claimed that he filled out a grievance while he was incarcerated in the SHU, but he received no response. *Id.* His IRR was denied because he had already filed a grievance on this issue in November. Docket 45-6. On March 8, 2016, Ainsworth filed an RAR, again stating that he had filed an IRR while in the SHU but did not receive a response. Docket 45-7. This RAR was denied because Ainsworth "submitted multiple forms referencing a single issue or this issue has been previously addressed." Docket 45-8.

## PROCEDURAL BACKGROUND

On March 30, 2016, Ainsworth filed a complaint in federal court alleging that defendants had used excessive force against him. Docket 1. The court screened Ainsworth's complaint under 28 U.S.C. § 1915A and granted him leave to amend his complaint. Docket 8. Ainsworth filed an amended complaint. Docket 9. The court screened his amended complaint and directed it be served on defendants. Docket 10.

After defendants answered Ainsworth's amended complaint, Docket 21, the court issued a scheduling order. Docket 22. On August 26, 2016, defendants moved to stay discovery. Docket 27. Defendants argued that they were entitled to qualified immunity and that they should not be subject to discovery until this issue was determined. *Id.* The same day, the court granted defendants' motion. Docket 29.

On October 3, 2016, defendants moved for summary judgment. Docket 38. They argue that Ainsworth failed to exhaust his administrative remedies, and his claim should be dismissed under the Prison Litigation Reform Act (PLRA). Docket 39. They also argue that they are entitled to summary judgment based on qualified immunity because the force they used was reasonable. *Id.* Before and after defendants filed their motion for summary judgment, Ainsworth filed a number of motions raising a variety of issues.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

## I. Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on Ainsworth's excessive force claim. They argue that Ainsworth's claim should be dismissed because he failed to exhaust his administrative remedies. They also argue they are entitled to summary judgment based on qualified immunity because they applied force in a good faith effort to restore discipline.

### A. Exhaustion of Administrative Remedies

Defendants argue that Ainsworth failed to exhaust his administrative remedies before filing his complaint. "An inmate must exhaust all available administrative remedies before bringing a § 1983 suit." *Porter v. Sturm*, 781 F.3d 448, 450 (8th Cir. 2015) (citing 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). "Available remedies are 'capable of use for the accomplishment of a purpose: immediately utilizable [and] accessible.' " *Id.* (quoting *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)).

An inmate must pursue the " 'grievance process to its final stage' to 'an adverse decision on the merits.' " *Id.* (quoting *Burns*, 752 F.3d at 1141). The inmates' subjective belief that there is no point in pursuing the process is immaterial. *Id.* (quoting *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002)). But "[i]nmates are excused from exhausting remedies 'when officials have

prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures.' " *Id.* at 452 (quoting *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005)). " '[A] remedy that prison officials prevent a prisoner from utiliz[ing] is not an available remedy under § 1997e(a) . . . .' " *Id.* (quoting *Miller*, 247 F.3d at 740). Finally, "[n]onexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Id.* at 450 (citing *Jones*, 549 U.S. at 211–12).

The Eighth Circuit has stated that "[p]rison officials' failure to timely respond to a grievance could be a basis for a prisoner to show that he exhausted 'available' administrative remedies." *Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003). In *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001), the Eighth Circuit denied defendants' argument that the district court erred by failing to dismiss Foulk's excessive force claim on the ground that he failed to exhaust his administrative remedies. Foulk claimed that he timely filed an IRR, but that prison officials failed to respond within the required time. *Id.* at 694-95. He argued that he did all he could to obtain administrative relief and thereby exhausted his administrative remedies. *Id.* at 695. It was established at trial that Foulk failed to file a grievance or grievance appeal. *Id.* at 698. It was also established that the prison's failure to respond to the IRR precluded Foulk from filing a grievance. *Id.* Therefore, "the district court lacked a sufficient factual basis on which to find that Foulk did, in fact, fail to exhaust his administrative remedies[,]" and the Eighth Circuit held that "the district court

did not err in declining to dismiss Foulk's excessive force claim for failure to exhaust administrative remedies, as required under the PLRA." *Id.*

Ainsworth makes the same arguments as Foulk. He provides evidence that he attempted to file an IRR while he was in the SHU immediately after he was attacked. He provided an affidavit stating that he filled out an IRR on October 14, 2015, and gave it to Day because he could not take it to his unit coordinator himself. Docket 56 ¶ 5. Defendants' evidence also supports this claim. In every grievance Ainsworth filed, he states that he filed an IRR while he was in the SHU but received no response. Docket 45-3; Docket 45-5; Docket 45-7.

"Inmates are excused from exhausting remedies 'when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures.' " *Porter*, 781 F.3d at 452 (quoting *Gibson*, 431 F.3d at 341). Here, prison officials did both. First, at the only point Ainsworth was allowed to file an IRR (within thirty days), prison officials denied him the ability to do so. He personally could not submit the IRR himself, and when he gave the IRR to a prison official, it was not submitted. Second, there was no response to this IRR, a violation of the prison's own policies. Under prison policy, officials must respond to the IRR within ten days and provide the inmate with copies of the IRR. Docket 42-5 at 5. This did not happen with Ainsworth's first IRR.

Defendants argue that even if Ainsworth attempted to file an IRR in the SHU, once he got out, he did not appeal the IRR that he filed on November 23,

2015. But that IRR was denied for failing to file within thirty days of the attack and was not considered on the merits. Further, it is the burden of the defendant to show that a prisoner plaintiff failed to exhaust all available administrative remedies under the PLRA. *Lyon*, 305 F.3d at 809. Defendants did not respond to Ainsworth's evidence that he was prevented from filing an IRR in time for it to be considered on the merits or that the IRR was never responded to, which is required under prison policy.

Evidence similar to that provided by Ainsworth has been used by other courts to deny dismissal for failure to exhaust. In *Nixon v. Sanders*, 243 F. App'x 197 (8th Cir. 2007), the Eighth Circuit concluded that Nixon, the prisoner plaintiff, had raised a factual dispute as to whether he was denied grievance forms, and the court reversed the district court's dismissal of Nixon's claims based on the ground that he had not fully exhausted his administrative remedies. Defendants supported their argument for dismissal or summary judgment with prison records and an attorney's declaration. *Id.* at 198. Nixon lacked "proof to the contrary[.]" *Id.* Still, in "various submissions," Nixon complained that prison officials ignored his grievances and refused to provide him with forms to proceed through the grievance system. *Id.* at 199. In *Nixon*, the Eighth Circuit found that a factual dispute existed after the parties presented similar evidence to the evidence presented here. *See also Conner v. Doe*, 285 F. App'x 304 (8th Cir. 2008) (finding that a jail's grievance officer's declaration that there was no record of plaintiff filing a grievance insufficient to establish failure to exhaust in the face of plaintiff's assertion in his complaint

that he had filed relevant grievances but did not receive copies of them or responses to them).

The Supreme Court has "identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). None of these benefits are furthered by finding Ainsworth's claims unexhausted.

There is a material question of fact as to whether prison officials, inadvertently or otherwise, prevented Ainsworth from using the grievance system in a timely manner. If they did, they prevented him from having his grievance considered on the merits. Now, defendants argue that because Ainsworth did not follow the grievance procedure, the court should dismiss his complaint, even though – if Ainsworth is correct – they are the reason he did not properly follow that procedure. Further, defendants were presented with the facts by Ainsworth in a straightforward way in his grievances. They had the chance to deal with the alleged violation of Ainsworth's constitutional rights. That is what the interplay between the grievance system and the PLRA is meant to achieve, it is not meant to insulate prison officials from ever having to deal with alleged violations of constitutional rights whether internally or in the court system.

**B.     Excessive Force**

Defendants move for summary judgment on Ainsworth's Excessive Force claim. Under the Eighth Amendment, prisoners are protected "from the unnecessary and wanton infliction of pain by correctional officers[.]" *Treats v. Morgan*, 308 F.3d 868, 870 (8th Cir. 2002) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). This is true, "regardless of whether an inmate suffers serious injury as a result." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Defendants may "use force reasonably 'in a good-faith effort to maintain or restore discipline,' but force [may] not to be used 'maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson*, 503 U.S. at 7).

"In an Eighth Amendment excessive force case, 'the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)). In deciding an Eighth Amendment claim, the court considers "whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats*, 308 F.3d at 870 (citing *Hudson*, 503 U.S. at 7). Defendants' use of force can be separated into two incidents. In the first, Droz sprayed Ainsworth with

Cap Stun gas. In the second, a physical altercation occurred between defendants and Ainsworth.

### 1.   Use of Cap Stun Gas

In *Treats v. Morgan*, 308 F.3d 868, 870 (8th Cir. 2002), the Eighth Circuit Court of Appeals considered an Excessive Force claim concerning the use of Cap Stun gas. The Eighth Circuit affirmed the district court's denial of summary judgment based on qualified immunity in similar circumstances. Treats testified that his radio was confiscated by prison staff, and he was ordered to sign a form acknowledging the confiscation. *Id.* at 870. When Treats signed it, he told staff he did not want a copy. *Id.* He was ordered to take his copy. *Id.* Treats refused again. *Id.* Without warning, prison staff sprayed Treats in the face "with a prolonged burst" of Cap Stun gas. *Id.* Another correctional officer ran to the scene, slammed Treats to the floor, and handcuffed him. *Id.*

On appeal, defendants argued that they were entitled to qualified immunity because their use of force was reasonable and the harm done to Treats was *de minimis. Id.* at 871. The Eighth Circuit held that "the evidence does not show an objective need for the force which was used because Treats had not jeopardized any person's safety or threatened prison security." *Id.* at 872.

The court stated, "The law recognizes that order and discipline are important in running a correctional institution, but that does not authorize the arbitrary use of force, nor does it justify punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns."

*Id.* at 872. Although the defendants cited *Jones v. Shields*, 207 F.3d 491

(8th Cir. 2000), to argue that the use of Cap Stun gas was constitutional, the

court explained, "Not every instance of inmate resistance justifies the use of

force, and use of pepper spray will not be justified every time an inmate

questions orders or seeks redress for an officer's actions." *Id.* at 872-73 (citing

*Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993); *Foulk*, 262 F.3d at 702).

The court stated that this case was similar to *Foulk* because "Treats was

also sprayed in the face with capstun after questioning an order and asking to

speak to a supervisor." *Id.* at 873. The case was also similar to *Hickey*, because

there the prisoner " 'was not physically threatening the officers,' and was

'nonviolent.' " *Id.* at 874 (quoting *Hickey*, 12 F.3d at 758, 759). Viewed in a

light favorable to Treats, the court found that "the evidence shows that there

was no objective need for the degree of force used or the pain inflicted, that

appellants could not reasonably have perceived Treats to be a threat to

themselves or institutional security at the time, and that appellants failed to

temper their forceful response." *Id.*

Twelve years later, in *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014), the

Eighth Circuit affirmed the district court's grant of summary judgment. Burns,

the prisoner plaintiff, claimed that his Eighth Amendment rights were violated

when Eaton, a prison official, sprayed him with Cap Stun gas. *Id.* at 1137. The

incident occured when Burns finished his shower and refused to let Eaton cuff

him. *Id.* at 1138. Eaton threatened to spray Burns, and Burns threw his

shampoo at Eaton. *Id.* Eaton then sprayed Burns, and after Burns threw his soap dish at him, Eaton sprayed Burns again. *Id.*

Burns argued that he posed no threat because he was alone in a locked cell. *Id.* at 1139. In affirming summary judgment, the court pointed out that after Burns refused to be cuffed,

> Eaton no longer faced the relatively simple task of cuffing Burns and escorting him back to his cell. Eaton now faced a recalcitrant inmate. He could not simply leave Burns in the Isolation Unit shower cell, where he did not belong. Either Burns must be persuaded to comply with the command to return to his cell, or someone must enter the shower cell and forcibly remove him.

*Id.*

The court explained that Burns "threw an object or spit at Eaton" when Eaton warned him he would be sprayed. *Id.* at 1140. After these "aggressive act[s] of defiance, Eaton deployed a small amount of pepper spray." *Id.* The court explained that this case was different than "the few cases where we denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying," which "involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." *Id.*

Defendants argue that when Droz sprayed Ainsworth there was an objective need for force because of Ainsworth's behavior. Both parties agree that Ainsworth was kicking the door. Ainsworth alleges that he kicked the door to get the attention of a superior officer when Droz failed to give him his whole

lunch. Docket 31 at 1. Droz avers that he sprayed Ainsworth because Ainsworth would not stop kicking the door and because he purposefully spilled milk in his cell.

At this point, however, Ainsworth did not pose a physical threat to Droz. Like Treats, there is no evidence that Ainsworth had "jeopardized any person's safety or threatened prison security." *Treats*, 308 F.3d at 872. The Court in *Treats* specifically stated that the "use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." *Id.* at 873 (citing *Foulk*, 262 F.3d at 702). This case is similar to *Treats* and *Foulk* in that Ainsworth was merely "questioning an order and asking to speak to a supervisor." *Id.* at 873. The fact that Ainsworth was making noise and disagreeing with Droz, but was still locked in his cell, and according to Ainsworth, not threatening Droz in any way, does not show an objective need for force to maintain order or protect prison staff.

This case is distinguishable from *Burns* because Burns threw objects and spit at a member of prison staff. *Burns*, 752 F.3d at 1140. In *Burns*, there was a need to bring Burns back to his cell, but that did not exist here because Ainsworth was already in his cell. Although the Eighth Circuit has upheld summary judgment based on qualified immunity when plaintiff prisoners were given warnings, *see id.*, there is a material question of fact whether Droz sprayed Ainsworth for the purpose of inflicting pain, used unnecessary amounts of Cap Stun gas, and used additional excessive physical force against Ainsworth. Defendants also argue that Droz made efforts to temper the severity

15

of force by giving verbal warnings before he sprayed Ainsworth. Docket 39 at 12. Even so, there is still a question of material fact as to whether the force used was excessive.

In *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006), the Eighth Circuit reversed a district court's grant of summary judgment in favor of correctional officers. It cited as material questions of fact whether defendants used excessive force:

> whether their acts were defensive in nature . . . or motivated by anger; whether they were necessary to maintain order or were excessive reactions by frustrated officers; . . . whether the amount of force used was commensurate with the situation[;] . . . whether or not [plaintiff] failed to comply with orders given by officers in the cell[;] whether she was actively resisting them[;] whether verbal orders or the application of less force would have been sufficient[;] whether or not a warning issued before application of the pepper spray[;] and whether [plaintiff] suffered real injuries.

*Id.* at 1113.

The court reversed the grant of summary judgment because these questions could be answered by a trier of fact in either defendants' or plaintiff's favor, and a jury could find that force was applied maliciously and sadistically. *Id.* Here, these questions cannot be answered on summary judgment. Both parties have provided affidavits averring different facts. Therefore, summary judgment based on Droz's use of Cap Stun gas is denied.

### 2.   Other Use of Force

Defendants argue that they are entitled to summary judgment on Ainsworth's claims that they used excessive force by tackling and punching him. There is a material question of fact as to what force was used. Ainsworth

avers that he was punched in the head repeatedly. Docket 56 ¶ 1. Defendants aver that only Gengler punched Ainsworth, he punched him only in the head, and he punched him only in order to release Williams, who was trapped under Ainsworth's legs. Docket 43 ¶¶ 8-9. Both parties agree Ainsworth was tackled to the ground.

There is also a material question of fact as to what need there was for the force. Defendants aver that Ainsworth pulled his hand into his cell with one hand cuffed. Docket 41 ¶¶ 7-8. Ainsworth offers a different explanation: he says when he had one hand cuffed, one of the correctional officers bent his finger back, attempting to break it, and that is why he had to pull his hand back into his cell. Docket 56 ¶ 9. Even according to defendants, however, this did not lead to further use of force because once Droz ordered Ainsworth to come to the front of the cell and threatened to spray him again, Ainsworth complied and was cuffed. Docket 41 ¶¶ 8-9. Defendants aver that, after the door opened, Ainsworth began to resist. *Id.* ¶ 9. This is how they justify tackling and punching Ainsworth. For his part, Ainsworth avers that he did not resist at any time. Docket 56 ¶ 2.

Every material fact is disputed here. If Ainsworth is believed, as he must be at this stage as the non-movant, defendants had no reason to perceive a threat, and he was not combative. Therefore, defendants had no reason to use force. Defendants also used a great amount of force, including punching Ainsworth in the head when he was on the ground not resisting. And defendants do not claim that they tempered their use of force at that point.

Defendants argue that the extent of Ainsworth's injuries favors the conclusion that their use of force was reasonable. But "[n]o lasting injury is necessary to make out an Eighth Amendment violation, for the infliction of pain is sufficient if it was inflicted for the purpose of causing harm." *Treats*, 308 F.3d 868, 874 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 9); *see also Foulk*, 262 F.3d at 701 (same). There is a material dispute of fact as to whether there was an injury caused to Ainsworth. To the extent that a material dispute of fact does not exist, both parties' evidence shows that Ainsworth suffered injury because being sprayed with Cap Stun gas causes pain and Gengler's affidavit and the medical evidence show that Ainsworth had lumps on his head from the attack. Docket 43 ¶ 13; Docket 73-1 at 1.

Defendants argue that Ainsworth has failed to meet his burden because he has only presented self-serving affidavits in support of his response to their motion for summary judgment. They argue that he cannot show their intent was to harm him. Defendants cite *Frevert v. Ford Motor Co.*, 614 F.3d 466 (8th Cir. 2010), in support of this argument. Frevert's affidavit, however, "directly contradicted both his petition and interrogatories." *Id.* at 474. The affidavit sought "to add a crucial element—a specific violation of state law—to his cause of action that was never alleged in the complaint." *Id.*

Defendants' argument is baseless. Ainsworth's affidavit merely reflects what is in his complaint and in the evidence they themselves present. Further, the reason Ainsworth only has his own affidavit is that the court granted defendants' motion to stay discovery. Ainsworth does not have access to any

other evidence. The fact that defendants raise this argument now is unfair to Ainsworth. Finally, defendants support their argument that their use of force was not malicious and sadistic with their own affidavits. The remainder of the evidence presented by defendants concerns Ainsworth's grievances and medical care. It does not support defendants' argument on intent any more than it supports Ainsworth's argument.

### 3.      Right Clearly Established

In 2002, the Eighth Circuit held, "It is 'well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause.' " *Treats*, 308 F.3d at 870 (quoting *Foulk*, 262 F.3d at 702). The court also held that it was "clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security." *Id.* Therefore, at the time of the incident in this case, Ainsworth's right was clearly established.

Defendants have presented a plausible argument, supported by their own affidavits, that they did not use excessive force in violation of Ainsworth's Eighth Amendment rights. But that is not the standard they must meet in order to be granted summary judgment. A material question of fact exists as to whether spraying Ainsworth while he was in his cell, tackling him, and punching him were all reasonable uses of force under the circumstances. Therefore, defendants' motion for summary judgment is denied.

## II.     Motions to Withdraw from Case

Ainsworth filed two motions asking the court to tell the Attorney General's Office that he would dismiss his case if they would drop pending charges against him. Docket 31; Docket 33. The court does not act as Ainsworth's counsel. He may settle the case directly with defendants if he wishes. Further, the court has no power to force the Attorney General's Office to accept his settlement. Therefore, Ainsworth's motions to withdraw from the case are denied.

## III.    Motion to Add Discovery

Ainsworth moves to add discovery. Docket 36. He wishes to give the court notice of Droz's subsequent firing. Ainsworth is free to use evidence in his motions or memorandums, but filing the information with the court in this way is inappropriate. Therefore, Ainsworth's motion to add discovery is denied.

## IV.    Motion for In Camera Review

Ainsworth moves for in camera review. Docket 46. He challenges the version of events in defendants' affidavits. Ainsworth believes there is security camera footage from the day he was attacked. He requests that the court review this footage. The defendants have supplied evidence that the footage does not exist. Docket 51-1 ¶ 4. Therefore, Ainsworth's motion is denied.

## V.     Motion to Compel Discovery

Ainsworth moves to compel discovery. Docket 48. He requests that the defendants answer his interrogatories. Defendants respond that discovery is stayed and if Ainsworth overcomes their motion for summary judgment, they

will answer his interrogatories. Docket 51 at 1. The court has now denied defendants' motion for summary judgment, and Ainsworth's motion is granted. Defendants are ordered to respond to Ainsworth's interrogatories within 30 days.

**VI.   Motion to Reconsider**

Ainsworth moves the court to reconsider its order staying discovery. Docket 50; Docket 60. He points out that the court granted defendants' motion the day it was filed. Docket 50. Because the court has now denied defendants' motion for summary judgment based on qualified immunity, the stay is lifted, and discovery may now proceed. Therefore, Ainsworth's motions to reconsider are denied as moot.

**VII.   Motion to Investigate**

Ainsworth filed a motion to investigate, requesting that the court investigate his claims. Docket 57. He alleges that he was told by a prison official that all information concerning uses of force at the prison is saved on a database. *Id.* at 1. He also wants his medical records, the pictures from the incident, and the video footage of the incident. *Id.* at 2. Some of this information is in the record already. Further, the court does not have jurisdiction or ability to investigate his claims. Therefore, his motion to investigate is denied.

**VIII.   Motion for Medical Records**

Ainsworth moves the court to order defendants to produce his medical records. Docket 58. Until now, discovery has been stayed and defendants were

not obliged to produce Ainsworth's medical records. Now that the stay has been

lifted, defendants are ordered to produce Ainsworth's medical records. The

defendants have already docketed Ainsworth's relative medical records. *See*

Docket 73. Ainsworth has a right to these records to the extent they are

relevant to his claims. Therefore, Ainsworth's motion for medical records is

granted. Defendants are ordered to produce Ainsworth's relevant medical

records.

## IX.    **Motion for Jury Trial**

Ainsworth moves the court to grant him a jury trial. Docket 62. Both

Ainsworth and defendants have already demanded a jury trial. Docket 2;

Docket 21 at 3. Therefore, Ainsworth's motion is denied as moot.

## X.    **Motion for Default Judgment**

Ainsworth moves the court to enter default judgment in his favor. Docket

66. Under the Federal Rules of Civil Procedure, "If electronically stored

information that should have been preserved in the anticipation or conduct of

litigation is lost because a party failed to take reasonable steps to preserve it,

and it cannot be restored or replaced through additional discovery, the

court . . . [may] enter a default judgment." Fed. R. Civ. P. 37(e).

Ainsworth argues that defendants should have preserved the video

footage of the attack. Docket 66 at 3. He argues either defendants destroyed

the footage intentionally because of what it shows, or defendants accidentally

destroyed it, but either way, they should be held responsible. *Id.* His argument

is based on the fact that signs in the area of the prison where he was attacked

say that the area is under video surveillance. *Id.* at 2. Further, he avers there are three cameras in the unit where he was attacked. Docket 68 ¶ 8.

Defendants argue that the video footage does not exist. Docket 70 at 2. They also argue that because Ainsworth did not file his complaint until eight months after he was attacked, litigation was not reasonably foreseeable until the complaint was filed. *Id.*

Ainsworth filed this motion while summary judgment was pending and discovery was stayed, and defendants are correct that this was not the appropriate time to file this motion. But defendants do no state that the footage *never* existed, merely that Ainsworth fails to put forward evidence that it did exist. This is not true. Ainsworth explains that the area in which he was attacked has signs saying that it is subject to surveillance, that there are three cameras in the unit, and that he was told that footage of uses of force is saved. Therefore, it is arguable that the footage *should* exist. Defendants have not explained whether it ever existed. Now that discovery will begin, they may have to. But at this time, the court cannot say that defendants should have preserved the video footage and are therefore subject to the penalties of Rule 37(e). Default judgment is especially inappropriate at this time. Therefore, Ainsworth's motion is denied.

## CONCLUSION

Ainsworth has shown an issue of material fact as to whether he exhausted his remedies, and defendants fail to show that there is no genuine issue of material fact as to Ainsworth's excessive force claim. Therefore,

summary judgment is denied. The order staying discovery is lifted. Ainsworth's motions are granted or denied as discussed above.

Thus, it is ORDERED:

1. Defendants' motion for summary judgment (Docket 38) is denied.

2. The court's order staying discovery is lifted.

3. Ainsworth's motions to withdraw from case (Docket 31; Docket 33) are denied.

4. Ainsworth's motion for add on discovery (Docket 36) is denied.

5. Ainsworth's motion for in camera review (Docket 46) is denied.

6. Ainsworth's motion to compel discovery (Docket 48) is granted. Defendants are ordered to respond to Ainsworth's interrogatories.

7. Ainsworth's motions to reconsider (Docket 50; Docket 60) are denied as moot.

8. Ainsworth's motion to investigate (Docket 57) is denied.

9. Ainsworth's motion for medical records (Docket 58) is granted. Defendants are ordered to produce Ainsworth's relevant medical records.

10. Ainsworth's motion for a jury trial (Docket 62) is denied as moot.

11. Ainsworth's motion for default judgment (Docket 66) is denied.

Dated April 11, 2017.

BY THE COURT:
/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE